STATE, CHARLES M. SLOAN, PROSECUTOR, v. BENAJAH P. WILLS.

On *certiorari* bringing up a judgment in the Court of Common Pleas from a justice's court, in an action for damages for a breach of a warranty in the sale of a horse—*Held*, that there was evidence to support the finding of the Court of Common Pleas that the damages resulting from such breach, if existing, had been satisfied by the terms of a resale of the horse to the warrantor.

This *certiorari* brings up a judgment of the Court of Common Pleas of Burlington.

Argued at June Term, 1882, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiff in *certiorari*, *W. A. Barrows.*

For the defendant, *J. C. Ten Eyck.*

The opinion of the court was delivered by

REED, J.    The action below was brought upon a warranty given by Wills in a sale of a horse by him to Sloan.

The guaranty was to the effect that the horse was sound—save a malformation of the right knee—gentle and kind, in single or double harness, free from tricks or vice, fearless of steam-cars, and could trot in three minutes, and be driven by the most timid person, in safety.

Upon the trial, two questions arose—first, whether there had been a breach of this warranty, and second, if so, was there a satisfaction of any damages resulting from said breach?

The court below has sent up its findings of fact, and the evidence bearing upon them.    It finds, first, that no breach of the warranty is proven, and also that, if proven, a second agreement of sale of the horse made between the parties, was

a settlement of all controversies growing out of the original sale.

The contention is, on the part of the plaintiff in *certiorari*, that the evidence shows, uncontradictedly, that the horse was lame, and was liable to take fright, and, secondly, that there is no evidence to support the second finding, that the injury, or supposed injury, arising to the plaintiff from the breach of warranty, had been satisfied by a subsequent resale.

It is manifest that, if there is evidence upon which the court below could have founded either of its findings, it is sufficient to defeat the action.

Without considering the finding as to the breach of the warranty, I think there is in the testimony sent up, that which would permit the court to find as it did.

The testimony discloses that, after the sale of the horse by Wills to Sloan, the latter complained that the guaranty had been broken. The following is the substantial part of Wills' testimony as to the subsequent transaction between the parties:

"About ten days later—April 16th, I think—we met opposite the 'Mirror' building; Sloan came over; he said, That horse I got of you is a vicious horse; he is a kicker; I said, Charley Sloan, that is no such thing; * * * I said, What are you going to do with him? he said, I want to trade him to you; have you anything to suit me? I told him I had my sorrel horse; he was well known around the town; I would exchange the way I agreed to in the beginning; I said, I have been bothered and pestered about this horse; you have got to get three or four men to examine him, before I will exchange with you; he said he was a business man, and did his own business; he said, I want this thing settled to-day; do you understand? I said, Charley, I am about to get a dun horse, which I will exchange with you; he said, No, I want this thing settled; I told him I would exchange the dun horse with him, or I would take him and sell him for you; he said, No, I want this thing settled to-day; I said, Charley, what do you want me to do? he said, I want you to buy the

horse and settle the thing; I said, Charley, I don't want a horse; I have five horses in my stable; those two things I got of you—one strained across the loins, and not worth a dollar, the other old and lazy; I said, Charley, what do you want for the horse? I am willing to do anything that is right; I will try to settle with you if I can; he said, I want $200 for him; I said, That is a great deal more than you gave me; he said, Well, I want this thing settled to-day; do you understand? I said, Charley, to settle the matter and have no more trouble about it, I will make you an offer for him—I will give you $125, to settle with you; he says, If you will give me $150, I will take your note for four months; I said, No, I will give you what I said, and I wouldn't buy a horse, no way, only to settle with you; I gave him my check; he said, All right; I did give him my check for the horse; I bought this horse back to pacify and settle with you; I have no stable to put him in; he said, You may let him stay in my stable until Saturday night; this was after I had bought the horse and paid him for him; I gave him my check, and he gave me a receipt in full, without asking, for the horse; then I received a note, two weeks later, that he would give me two weeks to make up my mind."

It is not a question, in the present posture of the cause, whether this testimony was contradicted, nor how forcibly it was contradicted.

If the court could find in the evidence that which could legally lead to the conclusion that the second sale was understood by the parties to include a settlement of all claims arising from the warranty in the first barter, we cannot reverse the judgment below.

Taking the testimony above set forth, it seems to be a fair conclusion that Sloan was warned that the purchase by Wills was to be a settlement of all controversy previously arising.

That Sloan insisted upon a settlement at once, and that the second purchase, following on the heels of a demand for such settlement, and accompanied by the statements as sworn to by

Wills, is sufficient to lead to a conclusion in favor of the finding of the court.

Judgment below should be affirmed, with costs.